IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
Rochester Division

**Donna McKay,**

        Plaintiff

vs.

**State of New York,**

        Defendant

MEMORANDUM OF LAW
OF THE PLAINTIFF

Civil No.: 6:16-cv-06834

# TABLE OF CONTENTS

    Page

TABLE OF AUTHORITIES...................................................................................... i

I. REPLY TO THE CROSS-MOTION FOR SUMMARY JUDGMENT ............................................. 1

    I.A.    THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR THE
            PLAINTIFF'S CLAIM UNDER 18 U.S.C. §925A ................................................ 1

            I.A.(1.)    THE DEFENDANT WAIVED ANY DEFENSE TO THE
                          PLAINTIFF'S CLAIM UNDER 18 U.S.C. §925A.....................3

            I.A.(2.)    PHYSICIAN/HOSPITAL "ERROR" IS NOT A DEFENSE TO A
                          CLAIM UNDER 18 U.S.C. §925A .........................................3

            I.A.(3.)    THE MOOTNESS DOCTRINE IS INAPPLICABLE TO THE
                          PLAINTIFF'S CLAIM UNDER 18 U.S.C. §925A.....................6

            I.A.(4.)    THE DEFENDANT IMPROPERLY ASSERTS AN ELEVENTH
                          AMENDMENT DEFENSE THAT IS NOT IN PROPER FORM
                          AND/OR HAS BEEN WAIVED................................................8

    I.B.    THE PLAINTIFF HAS STANDING UNDER FED.R.CIV.P. 12(b)(1) TO
            BRING A CAUSE OF ACTION FOR THE RIGHT TO COUNSEL............................. 9

    I.C.    THE PLAINTIFF HAS STANDING UNDER FED.R.CIV.P. 12(b)(1) TO
            BRING A CAUSE OF ACTION UNDER THE DUE PROCESS CLAUSE ..................... 11

# TABLE OF AUTHORITIES

**CONSTITUTIONAL AND STATUTORY PROVISIONS**   PAGE

U.S. Const. amend. II .................................................................................... 2, *passim*

18 U.S.C. §922(g)(4) ..................................................................................... 2, *passim*

18 U.S.C. §925A ........................................................................................... 1, *passim*

18 U.S.C. §926 .............................................................................................. 8

**REGULATIONS – FEDERAL**   PAGE

27 CFR Part 447 ........................................................................................... 4

27 CFR §478.11 ............................................................................................ 4

28 CFR Part 25 ............................................................................................. 4

28 CFR §25.4 ................................................................................................ 8

28 CFR §25.5 ................................................................................................ 2

28 CFR §25.10 .............................................................................................. 3

28 CFR §25.10(e) ......................................................................................... 3

28 CFR §25.10(f) .......................................................................................... 1

28 CFR §25.4 ................................................................................................ 8

28 CFR §25.5 ................................................................................................ 2

**STATUTORY MATERIALS – STATE AND LOCAL**   PAGE

N.Y. Correct. Law Art. 23 and 23-A ............................................................ 6

**CASES - U.S. SUPREME COURT**   PAGE

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) ............................................... 12

*Friends of the Earth v. Laidlaw Env. Svcs.*, 528 U.S. 167 (2000) .......................... 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................... 9

*Steffel v. Thompson*, 415 U.S. 452 (1974) .......................................................... 10

*Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334 (2014) ................................. 10

*VA v. Amer. Booksellers*, 484 U.S. 383 (1983) ................................................... 11

## CASES - 2ND CIR. COURT OF APPEALS                                           PAGE

*Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156 (2nd Cir. 2010) ............................. 7

*Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49 (2nd Cir. 2001),
   cert. denied, 534 U.S. 827 (2001) ...................................................................... 7

*Doyle v. Midland Credit Mgmt.*, 722 F.3d 78 (2nd Cir. 2013, *per curiam*) ........... 7

*Martin-Trigona v. Shiff*, 702 F.2d 380 (2nd Cir. 1983) ........................................ 8

*Ross v. AXA Equitable Life Ins. Co.*, 2017 U.S. App. LEXIS 3239
   (2nd Cir., February 23, 2017) ............................................................................ 9

*Spokeo, Inc. v. PulsePoint, Inc.*, 2017 U.S. App. LEXIS 5262
   (2nd Cir., March 27, 2017) ................................................................................ 9

*Van Wie v. Pataki*, 267 F.3d 109 (2nd Cir. 2001) ................................................ 7

## CASES - CIR. COURT OF APPEALS (OTHERS)                                    PAGE

*Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002 (9th Cir. 2003) ..................... 12

*Mobil Oil Corp. v. Attorney Gen. of Va.*, 940 F.2d 73 (4th Cir. 1991) ................. 12

*Paton v. LaPrade*, 524 F.2d 862 (3rd Cir. 1975) ............................................. 9, 10

## CASES - W.D.N.Y.                                                                    PAGE

*Robinson v. Sessions*, 2017 U.S. Dist. LEXIS 54589 (W.D.N.Y., April 10, 2017,
    *pending appeal*, 2nd Cir. Docket No. 17-1427 .................................................. 9, ftnt. 7

## CASES - DIST. CT. (OTHERS)                                                          PAGE

*Islam v. N.Y. State Bd. of Parole*, 2016 U.S. Dist. LEXIS 72706
    (N.D.N.Y., June 2, 2016) ................................................................................... 8

*Sanchez v. N.Y. City Hous. Auth.*, 2017 U.S. Dist. LEXIS 86779
    (S.D.N.Y., June 6, 2017) .................................................................................... 7

## FEDERAL RULES OF CIVIL PROCEDURE                                                    PAGE

Fed.R.Civ.P. 12(b)(1) ..................................................................................... 9, ftnt. 7

Fed.R.Civ.P. 12(b)(6) ..................................................................................... 1, 9 ftnt. 7

Fed.R.Civ.P. 12(h)(3) ..................................................................................... 9, ftnt. 7

Fed.R.Civ.P. 56 .............................................................................................. 1

Fed. R. Civ. P. 56(a) ...................................................................................... 1

Fed.R.Civ.P. 56(c)(4) ..................................................................................... 2

## OTHER MATERIALS                                                                     PAGE

Bureau of Alcohol, Tobacco, Firearms and Explosives, "Open Letter to the
    States' Attorneys General" (dated May 9, 2007) ............................................ 5

Connecticut Office of Policy and Management, "Mental Health
    Adjudications" (rev. 9/18/2012) ....................................................................... 6

Fed. Reg., Vol. 81, No. 3 (January 6, 2016), "Notice of Final Rule" ................... 5

Fed. Reg., Vol. 79, No. 4 (January 7, 2014), "Notice of Proposed
    Rulemaking" .................................................................................................... 5

Texas Office of Court Administration, "Texas NICS Mental Health
    Reporting Manual" (January 2015) ................................................................. 6

## I. REPLY TO THE CROSS-MOTION FOR SUMMARY JUDGMENT

The Defendant's response to the Plaintiff's Cross-Motion for Summary Judgment augmented the Defendant's earlier admissions of fault for failure to immediately correct the erroneous record it created to the FBI concerning Ms. McKay. The State raised no genuine dispute as to any material fact. The Court is required, as a matter of law, to grant the Plaintiff's request for a summary judgment order under 18 U.S.C. §925A; it is in a position of discretion to rule on the Due Process and Right to Counsel causes of action. On the Defendant's Motion to Dismiss for failure to state a cause of action under Fed.R.Civ.P. 12(b)(6), the Court must construe the allegations in favor of the Plaintiff. On the Cross-Motion for Summary Judgment under Fed.R.Civ.P. 56, the Court must look to the Defendant's answer for any genuine issue of fact requiring discovery. The Defendant has now twice admitted the essential allegations of the Plaintiff's Complaint, such that, no matter from which direction the Court examines the claims made, the Plaintiff should prevail.[1]

### I.A. THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR THE PLAINTIFF'S CLAIM UNDER 18 U.S.C. §925A.

Ms. McKay has statutory jurisdiction to obtain a court order directing the correction of the erroneous record and for an award of attorney's fees and costs. 18 U.S.C. §925A; 28 CFR §25.10(f). There being no dispute on the simple facts establishing the 18 U.S.C. §925A claim, the Court is required to enter summary judgment in favor of the Plaintiff, and to include an award of attorney's fees and costs. *Id.,* Fed.R.Civ.P. 56(a).

---

[1] L.R.Civ.P. 56 does not defeat this request, although the undersigned apologizes that said statement was not submitted with the Cross-Motion. The undersigned notes that this error does not require denial of the Cross-Motion as the Local Rule says "may constitute grounds for denial of the motion" (not "shall"). The undersigned has no objection if it would assist the Court to afford the Defendant 14 days to respond to the L.R.Civ.P. 56 Statement submitted herewith.

As a result of a license hearing, the County Court found "...McKay's time in the hospital was not a commitment within the meaning of 18 U.S.C. §922(g)(4)" and "Therefore, she does not fall under the prohibition of 18 U.S.C. §922(g)(4) from obtaining or possessing firearms or ammunition." *In re McKay,* 52 Misc.3d 936, 941 (2016). [7-2, Memo., pp. 1-2.] The Defendants were then obligated to "immediately correct" the erroneous record it had transmitted to the FBI for inclusion in the NICS database in order to restore the fundamental rights of the Plaintiff under the Second Amendment. The regulation at 28 CFR §25.5 plainly states: "Each data source will be responsible for ensuring the accuracy and validity of the data it provides to the NICS Index and will <u>immediately</u> correct any record determined to be invalid or incorrect." *Id.* (emphasis added)

The State, however, failed to honor and adhere to the binding decision of the County Court. The State did not timely correct the erroneous record on Ms. McKay it had reported to the FBI. Instead, only after the commencement of this federal lawsuit were efforts allegedly undertaken to correct the erroneous record. [13-1, Allen Decl., ¶18.]

Mr. Allen's Declaration does not establish through competent proof that the erroneous record concerning Ms. McKay has now been corrected. [13-1, Allen Decl.] The Declaration contains hearsay allegations not subject to hearsay exemptions, submitted by the Defendant for the truth of the matter that, allegedly, personnel at DCJS have taken actions to correct the erroneous report to the FBI. [13-1, Allen Decl., ¶¶9-10.] Mr. Allen, who states he works for OMH (not DCJS) is not a competent witness for these allegations. Fed.R.Civ.P. 56(c)(4). [13-1, Allen Decl., ¶1.] Mr. Allen makes no claim he entered the data, nor supervised or was responsible for the employee (unnamed) who allegedly did so.

The importance of obtaining written documentation of the correction relates to the lifelong interaction an individual has with the NICS system. If the Court dismisses the case now and if Ms. McKay is subsequently "denied" from a firearms purchase at an FFL, Ms. McKay will have no documentation that the state reporting agency (DCJS) corrected the erroneous record. The implementing regulations expressly contemplate that the individual about whom an erroneous record is corrected will come into possession of "written confirmation of the correction of the erroneous data." 28 CFR §25.10(e).

### I.A.1. THE DEFENDANT WAIVED ANY DEFENSE TO THE PLAINTIFF'S CLAIM UNDER 18 U.S.C. §925A.

The Defendant waived any defense to the 18 U.S.C. §925A motion for summary judgment. It did not create any issue of fact requiring discovery, which would have been created upon allegations: (1.) the record is correct as entered; and/or, (2.) the record was corrected prior to the commencement of the action. 28 CFR §25.10. First, the State does not claim it made any search of court records with production of a valid court order of involuntary commitment. (While such is not the situation for Ms. McKay, the State did not even make the allegation that it conducted a search of court records.) Second, any record modifications actually made were undertaken by the Defendant in response to this litigation, which is not an intervening event. The Defendant submitted no competent proof that the erroneous record is corrected.

### I.A.2. PHYSICIAN/HOSPITAL "ERROR" IS NOT A DEFENSE TO A CLAIM UNDER 18 U.S.C. §925A.

The State attempts to hide behind alleged errors of doctors and hospital administrators. [13-1, Allen Decl., ¶5, ¶6, ¶10, ¶20, ¶23, ¶25; 7-1, Levine Decl., ¶6; 13-2, Memo., p. 7,

"Although New York is the record keeper, it was not New York's fault that the information provided was erroneous."] The Allen Declaration describes a statewide system for reporting individuals under 18 U.S.C. §922(g)(4), as "The determination of whether a patient meets the involuntary commitment standards rests in the first instance with the professional actually treating the patient."[2] [13-1, Allen Decl., ¶10.] Mr. Allen further states, "Only if a hospital determines to involuntarily commit the patient to their facilities is that commitment reported to NICS." [13-1, Allen Decl., ¶10.] The State misunderstands that "involuntary commitment" as a matter of federal law has anything to do with medical providers and NYS Mental Hygiene Law. "Involuntary commitment" as a matter of federal firearms law is a term of art, defined by federal law and its associated implementing regulations. 18 U.S.C. §922(g)(4); 27 CFR §478.11.

The Allen Declaration details a state system operating outside of federal law. The system of reporting to the FBI for 18 U.S.C. §922(g)(4) should only be undertaken following entry of a court order of competent jurisdiction. The Defendant, instead, admits it runs a system based upon the opinion of a treating physician. [13-1, Allen Decl., ¶10; 7-1, Levine Decl., ¶4.]

This error in the design of the State reporting system appears to reflect its misinterpretation of 18 U.S.C. §922(g)(4). In all court documents, the State cites only to 18 U.S.C. §922(g)(4); it does not cite to the implementing regulations in 27 CFR Part 447 or 28 CFR Part 25, nor to any documents published by the ATF or DHHS.

---

[2] The Allen Declaration erroneously states that Plaintiff claims the process of involuntary commitment occurs in secret, as a footnote to the sentence above-quoted. [Allen Decl., ¶10, ftnt. 2] The Plaintiff claims that the manner of the State's reporting of individual patients to the FBI/ATF, the NYS Police, and the Counties occurs in secret. Mr. Levine states as much in his Memorandum when he points out that there is no reporting requirement to the individual when the state reporting agency files the "involuntary commitment" report to the FBI for inclusion in the NICS Index. [13-2, Def. Mem., p. 5.]

The ATF regularly transmits letters and guidance documents to the states to assist in proper implementation of federal firearms law. *See, e.g.,* U.S. Department of Justice/BATFE "Open Letter to the States' Attorneys General" (dated May 9, 2007), which bluntly states "For example, a "commitment" means a formal commitment, not a voluntary stay. Excluded are stays for observation only. Nor does the term include a stay in a mental institution that never involved any form of adjudication by a lawful authority." (p. 2). [Pl. Ex. 9.]

Indeed, to make the NICS computer entry, the U.S. Department of Health & Human Services specifies the NICS record entry to be: "…The name of the ineligible individual; the date of birth; sex; and codes indicating the applicable prohibitor, the submitting entity, and the agency record supporting the prohibition (e.g., an order for involuntary commitment)." Fed. Reg., Vol. 81, No. 3 (January 6, 2016), "Notice of Final Rule," p. 383.

Two further comments from the federal government are pertinent. First, "As such, the proposed rule generally would maintain a separation between treatment functions and NICS reporting functions. In addition, the rule would not permit the use or disclosure of any diagnostic or clinical information, or any other information about an individual that is not the minimum necessary for NICS reporting purposes." And, "We expect most reporting to continue to be done by the judicial system." Fed. Reg., Vol. 79, No. 4 (January 7, 2014), "Notice of Proposed Rulemaking," pp. 795 and 790, respectively, *superceded by* "Notice of Final Rule," *id.* The commentary to the final rule reporting expressly states: "…the permission does not extend to broader State law prohibitors, which may not require a formal adjudication of involuntary commitment and whose inclusion likely would involve more treatment providers in NICS reporting." Fed. Reg., Vol. 81, No. 3, *supra,* p. 389.

Further, the State could look to other states for examples of properly implemented reporting systems, many of which are available in the public domain. *See,* "Texas NICS Mental Health Reporting Manual," Office of Court Administration (January 2015).[3] [Pl. Ex. 10.] *See, also,* "Mental Health Adjudications," State of Connecticut (rev. 9/18/2012).[4] [Pl. Ex. 11.]

Unfortunately, the front end of the State's automated reporting is as flawed as its back end. The State suggests Ms. McKay could have requested a certificate of relief from disabilities. [13-1, Allen Decl., ¶14.] The certificate of relief from disability is akin to the criminal, post-conviction system, to allow an "eligible offender" to apply for relief from forfeitures imposed by law by reason of a conviction. N.Y. Correct. Law Art. 23 and 23-A. Without getting into the due process and privacy problems with the State's design of its certificate of relief from disabilities "program" for those who have been involuntarily committed, suffice it to say that Ms. McKay is not eligible for such an application because she was not involuntarily committed in the first place.

### I.A.3. THE MOOTNESS DOCTRINE IS INAPPLICABLE TO THE PLAINTIFF'S CLAIM UNDER 18 U.S.C. §925A.

*Friends of the Earth v. Laidlaw Env. Svcs.,* 528 U.S. 167, 192 (2000) sets out the distinction between acts which occur before the commencement of an action that render it moot and conduct of a defendant undertaken after commencement that does not defeat the lawsuit. It

---

[3] Available at: http://www.txcourts.gov/media/273988/nics-record-improvement-manual_june302014_final.pdf.

[4] Available at http://www.wdmtoolkit.org/~/media/Microsites/Files/Warrants%20and%20Dispositions/State%20Implementations/Connecticut/Category_5_Mental_Health_Adjudications.ashx

is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.,* 189.

Mr. Levine is incorrect in his citations to support his allegation that Ms. McKay's claim is moot. *Doyle v. Midland Credit Mgmt.*, 722 F.3d 78 (2nd Cir. 2013, *per curiam*) is not to the contrary. [13-2, Def. Mem., p. 1] Therein, the defendant submitted an oral offer for full remittance of sums sought by plaintiff pursuant to Fed.R.Civ.P. 68, which the plaintiffs rejected for not being in writing, concerning which the court dismissed the case under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Herein, the Defendant contests any order in favor of the Plaintiff and it contests any award of the Plaintiff's attorney's fees and costs. [7, Notice Mot., p. 1; 7-1, Levine Decl., ¶¶9-10; 7-2, Def. Mem.; 13-2, Def. Mem., p. 7.]

Similarly, *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 162-163 (2nd Cir. 2010) [13-2, Def. Mem., p. 1] also offers no guidance, wherein the court considered whether provisions of the Bankruptcy Act could be appealed under a "public interest" standard by the Trustee where the debtors statutory appeals deadline had expired.

The list of inapplicable cases continues. *Van Wie v. Pataki*, 267 F.3d 109 (2nd Cir. 2001) [13-2, Def. Mem., p. 1] involved a request for relief in an election that had already transpired, which plaintiffs did not then claim would effect them again at the time of the next primary election as registered voters not enrolled to a political party. *See also,* as cited by the Defendant, *Sanchez v. N.Y. City Hous. Auth.*, 2017 U.S. Dist. LEXIS 86779, *5-6 (S.D.N.Y., June 6, 2017) wherein plaintiff falsely claimed she was not afforded a pre-eviction hearing; *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 56-57 (2nd Cir. 2001), *cert. denied,* 534 U.S. 827 (2001) wherein plaintiffs' children either were no longer enrolled or had graduated from

defendant schools and/or plaintiffs had moved out of the school district; *Martin-Trigona v. Shiff,* 702 F.2d 380, 383-387 (2nd Cir. 1983) wherein the request to dismiss the claim as moot was denied because the motivating force of the contempt charge remained the Bankruptcy Court Trustee; and, *Islam v. N.Y. State Bd. of Parole,* 2016 U.S. Dist. LEXIS 72706, *7-8 (N.D.N.Y., June 2, 2016) wherein the plaintiff's claim of inappropriate sentencing was rendered moot by his release and the expiration of his maximum sentence.)

### I.A.4. THE DEFENDANT IMPROPERLY ASSERTS AN ELEVENTH AMENDMENT DEFENSE THAT IS NOT IN PROPER FORM AND/OR HAS BEEN WAIVED.

The State should not be permitted to persist in its Eleventh Amendment arguments. [7-2, Def. Mem., pp. 3-4; 13-2, Def. Mem., p. 3.][5] It is voluntary for a state to participate in NICS and it is voluntary for a state to upload records into the NICS Index. 18 U.S.C. §926; 28 CFR §25.4. New York voluntarily participates in NICS and it voluntarily submits records on its citizens to the FBI. [10-4, Pl. Ex. 3, 4.] It is voluntary to apply for a NIAA grant. New York State has repeatedly since 2007 applied for NIAA grants and has accepted, in aggregate, more than $16 million in such funds. [10-3, Pl. Mem., p. 7.] At the point the State voluntarily engages at this level, it binds itself to the obligation to know and properly apply federal law to all citizens it evaluates for reporting to the FBI to terminate their fundamental Second Amendment rights.

---

[5] Also, as earlier noted, any claim that 18 U.S.C. §925A is unconstitutional is not properly before this Court through motion practice as the same must be filed first as a cross-claim. [10-3, Pl. Mem., pp. 24-25.]

### I.B. THE PLAINTIFF HAS STANDING UNDER FED.R.CIV.P. 12(b)(1) TO BRING A CAUSE OF ACTION FOR THE RIGHT TO COUNSEL.

"Standing" consists of three elements at its "irreducible constitutional minimum." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (herein *"Lujan, II"*).[6] "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. ___, 136 S. Ct. 1540, 1547 (2016), citing *Lujan II, supra,* 560-561; *Mountain v. PulsePoint, Inc.,* 2017 U.S. App. LEXIS 5262 (2d Cir., March 27, 2017); *Ross v. AXA Equitable Life Ins. Co.,* 2017 U.S. App. LEXIS 3239 (2d Cir., February 23, 2017).

There is no question that Ms. McKay was erroneously reported under 18 U.S.C. §922(g)(4) to the FBI by the State, resulting in a depravation of Second Amendment and other civil rights and resulting in the creation of a federal file that could be used in criminal proceedings against her. *Paton v. LaPrade,* 524 F.2d 862, 868 (3rd Cir. 1975). Defendant argues that because Ms. McKay was able to secure the services of an attorney to represent her in a license hearing that was successful, she suffered no injury in fact.[7] [13-2, Def. Mem., pp. 3-4.] Counsel for the State concedes that there is no assigned counsel program for individuals defending their civil rights in license hearings. [13-2, Def. Mem., p. 5.] It was not necessary for Ms. McKay to have requested counsel or appeared *pro se* or lose the hearing or be arrested on

---

[6] Although the Defendant's motion in response to the Complaint requested dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action [7, Notice Mot., p. 1], the Defendant in its Memorandum answering the Cross-Motion throws in arguments concerning the standing of the Plaintiff [13, Def. Mem., pp. 3-4]. If the Defendant wanted to make that argument under Fed.R.Civ.P. 12(b)(1), respectfully, he should have noticed the same in his original Motion to dismiss. That said, because any court has authority to *sua sponte* consider standing, a brief commentary is provided herein. Fed.R.Civ.P. 12(h)(3). If a more detailed analytic is required, the undersigned trusts that the Court will request the same.

[7] This Court's recent decision in *Robinson v. Sessions,* 2017 U.S. Dist. LEXIS 54589, *21 (W.D.N.Y., April 10, 2017), *pending appeal,* 2nd Cir. Docket No. 17-1427 was issued upon proper notice by opposing counsel of an Fed.R.Civ.P. 12(b)(1) motion. [A-50.] The case does not involve 18 U.S.C. §922(g)(4) or other disqualifying event, and should be distinguished herefrom.

possession charges in order to seek corrective action to protect her fundamental constitutional rights. *Steffel v. Thompson,* 415 U.S. 452, 459 (1974). Mr. Gideon was already convicted following a trial when his request for counsel at trial went up on appeal. *Gideon, supra,* 337.

The State fails to acknowledge the obvious: under its current system, any patient who receives mental health treatment is at risk of being reported to NICS, including that if Ms. McKay is again hospitalized and is again reported by a medical provider, she will be back to the beginning. Her saga started with the medical event of an adverse reaction to codeine in cough syrup, prescribed by her primary care physician. *McKay, supra,* 938. The State has designed a system to fail by erroneously relying on medical providers (rather than judges) and by automating a system wherein the State does nothing to ensure the accuracy of the data that triggers its reports to the FBI to curtail people's fundamental civil rights. [13-2, Allen Decl., ¶9 and ¶10.] "The threat that the file poses is analogous to the dangers inherent in the maintenance of arrest files." *Paton, supra.*

Further, Ms. McKay continues to live under the Catch-22 of winning a license hearing that did not restore her civil rights. The County Court, in returning her permit and her firearms, unwittingly put her, and all others similarly situated, in the predicament that the next knock on the door could be the ATF/FBI for commission of a federal felony for ownership and possession of firearms as a disqualified person. The NICS database entry not being immediately corrected, the ATF/FBI could claim to be operating in good faith when making an arrest and confiscating all firearms for a crime first threatened by the NYS Police against Ms. McKay. *Susan B. Anthony List v. Driehaus,* 134 S.Ct. 2334, 2342 (2014). Ironically, Ms. McKay would then be entitled to assigned counsel under *Gideon.* Assignment of counsel at the point of the first

accusation of criminal violation of federal law is what is necessary, due to the complexity of the federal-state interface in this area of law and due to the fundamental Second Amendment rights involved. [10-5, Pl. Ex. 6; 10-2, Capanna Decl.]

### I.C. THE PLAINTIFF HAS STANDING UNDER FED.R.CIV.P. 12(b)(1) TO BRING A CAUSE OF ACTION UNDER THE DUE PROCESS CLAUSE CAUSE OF ACTION.

The responsive arguments pertinent to this point mirror those in the preceding section. The Defendant concedes that no notification is transmitted to anyone it reports to the FBI. It leaves that function to the County Court or County Licensing Officer after it transmits to them a secret letter from the NYS Police. The County Court *ex parte, sua sponte* Order to Show Cause did not involve an underlying pleading or other sworn affidavit from the State. It was served upon her by armed law enforcement officers at the point of court-ordered confiscation of her license and her firearms, and it did not even begin to tell her about potential federal criminal consequences to non-compliance. [10-4, Pl. Ex. 2.]

Did Ms. McKay receive "notice" at some point? No, she received a post-depravation court order that achieved its intended consequence of creating fear within her in circumstances of service upon her that were unnecessary. [1, Compl., ¶¶18-23.] *VA v. Amer. Booksellers*, 484 U.S. 383, 392-393 (1983). She received no advance or timely notification from any medical provider, NYS OMH, NYS DCJS, NYS Police, County Clerk, or County Sheriff's Department. [1, Compl., ¶12.] She was not served with a pleading, and there never was a pleading or a charging instrument submitted to the Court by the Defendant. [1, Compl., ¶¶36-39.]

The words of the Court order were cryptic; the County Court Order to Show Cause said "18 U.S.C. §922(g)(4)" and "involuntary commitment," and Ms. McKay was required to figure

it all out from there. [10-4, Ex. 2, p. 1.] When the Court issued the "Order of Reinstatement" (Falvey, J., June 7, 2016, unpublished, at 10-4, p. 4), it contained no notice that accepting the physical return of her firearms could be misinterpreted by federal law enforcement officers because of the enduring NICS record. And it certainly didn't forewarn Ms. McKay that the State would persistently fail to respect a court order. Even Mr. Eldridge at least received a questionnaire for post-benefit medical monitoring, provided responsive information concerning his providers, and received an explanatory letter with a list of reasons for the "proposed termination of benefits." *Matthews, supra,* 323-324.

"It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court..." *Dombrowski v. Pfister,* 380 U.S. 479, 484 (1965). Instead, the Defendant continues to engage in conduct depriving the Plaintiff of her rights, during the pendency of this federal lawsuit, and openly admitting the same to the Court – after the fact. Like Mr. Giddeon doing what was required, Ms. McKay and her Attorneys concentrated on the hearing at hand and fighting for victory. Public policy should encourage a person aggrieved by laws he considers unconstitutional to seek judicial redress "all the while complying with the challenged law, rather than to deliberately break the law and take his chnces in the ensuing suit or prosecution." *Ariz. Right to Life PAC v. Bayless,* 320 F.3d 1002, 1007 (9th Cir. 2003), citing *Mobil Oil Corp. v. Attorney Gen. of Va.,* 940 F.2d 73, 75 (4th Cir. 1991).

IN CONCLUSION, we look to this Court in earnest for the protection of our rights.

Dated: July 14, 2017

*Paloma A. Capanna*
Paloma A. Capanna, Attorney