UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONNA MCKAY,

                              Plaintiff,

                                                                          Case # 16-CV-6834-FPG

v.

                                                                          DECISION AND ORDER

STATE OF NEW YORK,

                              Defendant.
_____

## INTRODUCTION

Plaintiff Donna McKay brings this action pursuant to 18 U.S.C. § 925A and 42 U.S.C. § 1983 against Defendant State of New York ("the State") for erroneous reporting to the National Instant Criminal Background Check System ("NICS") and alleged constitutional violations. *See* ECF No. 1. Specifically, Plaintiff invokes the Sixth and Fourteenth Amendments to assert a right to counsel for indigent litigants in license hearings related to mental health, and she invokes the Fourteenth Amendment to assert a right to notification of NICS reporting by the State.

Plaintiff filed her Complaint on December 21, 2016. *Id.* On March 7, 2017, the State moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6). ECF No. 7. Plaintiff responded on May 12, 2017 and filed an accompanying Cross-Motion for Summary Judgment. ECF No. 10. For the reasons that follow, the State's Motion to Dismiss (ECF No. 7) is GRANTED, and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 10) is DENIED AS MOOT.

---

[1] While the Motion to Dismiss only cites Rule 12(b)(6), for the reasons discussed *infra*, the Court also construes the Motion as brought pursuant to Rule 12(b)(1).

## BACKGROUND[2]

On or about April 7, 2015,[3] Plaintiff sought voluntary admission to the mental health unit of Soldiers & Sailors Memorial Hospital. Her stay lasted less than twelve hours—she sought treatment for an adverse reaction to cough medicine, and she left the next day, when she felt better. At the time of her admission, Plaintiff confirmed that she had firearms in her house. Upon learning that information, the treating physician reported Plaintiff's stay to the State, pursuant to his understanding of New York's Secure Ammunition and Firearms Enforcement ("SAFE") Act, N.Y. Mental Hyg. Law § 9.46(b).

Following the treating physician's report, on April 13, 2015, the New York State Police issued a letter stating that Plaintiff had been involuntarily committed and was therefore barred from possessing firearms under federal law. The same day, the State Police sent that letter to the Yates County Clerk's Office, which matched the letter with the record of Plaintiff's pistol permit. Those documents were then provided to the Hon. W. Patrick Falvey, Yates County Court Judge, who issued an "Order to Show Cause and Interim Order" on April 14, 2015. The order suspended Plaintiff's pistol permit and directed the Yates County Sheriff to confiscate her firearms. During this time, Plaintiff's information was also transmitted to the NICS.

Pursuant to Judge Falvey's order, on April 15, 2015, officers from the Yates County Sheriff's Department went to Plaintiff's home. They showed her the order, informed her that she would have to appear in court, and confiscated her firearms. In response, Plaintiff hired an attorney, whom she retained through the first portion of her proceedings. She obtained different counsel in

---

[2] Unless otherwise noted, all facts are drawn from Plaintiff's Complaint (ECF No. 1). The Court notes that, throughout the thirty-three-page Complaint, Plaintiff's factual narrative is presented out of sequence and interwoven with arguments, statistics, and broad-based statements like "[t]he Second Amendment is the modern civil rights movement." *See* ECF No. 1, at 12. With that in mind, the Court feels it appropriate to remind Plaintiff of Federal Rule of Civil Procedure 8(a)(2), which instructs that a pleading "must contain . . . a short and plain statement of the claim."
[3] In the Complaint, Plaintiff does not provide the exact date of her hospital stay—she simply describes it as "one week prior" to the confiscation of her firearms. *See* ECF No. 1, at 7.

January 2016, when she hired her current attorney. Ultimately, the court determined that Plaintiff had been voluntarily admitted to the hospital, and that there was no good cause to revoke her pistol permit. Accordingly, it ordered Plaintiff's permit reinstated and her firearms returned. *See In re McKay*, 34 N.Y.S.3d 354, 359 (Yates Cty. Ct. 2016); Order of Reinstatement (Yates Cty. Ct. June 7, 2016).

## LEGAL STANDARD

### I. Nature of the State's Motion

In form, the State's motion is brought "pursuant to Rule 12(b)(6)." ECF No. 7, at 1. In substance, it addresses the sufficiency of the Complaint, but it also challenges standing, asserts mootness, and invokes Eleventh Amendment immunity.[4] *See id.* While the concepts of standing and mootness are distinct from that of subject-matter jurisdiction, *see, e.g.*, *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87–88 n.6 (2d Cir. 2006), they bear on whether such jurisdiction exists, *see John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017) (discussing standing); *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (discussing mootness). The proper vehicle for challenging standing or asserting mootness is thus a Rule 12(b)(1) motion to dismiss. *See Alliance*, 436 F.3d at 87–88 n.6 (addressing the practice of "sometimes" bringing standing challenges under Rule 12(b)(6)). Given the State's arguments regarding standing and mootness, the Court construes its Motion to also be brought under Rule 12(b)(1). *See, e.g.*, *Evans v. Port Auth. of N.Y. & N.J.*, No. 15-CV-3942 (MKB), 2017 WL 3396444, at *1 n.2 (E.D.N.Y. Aug. 8, 2017) ("Although the [defendant] does not expressly move to dismiss under Rule 12(b)(1), it moves to dismiss for lack of standing, and the Court therefore

---

[4] As discussed *infra*, the Court need not resolve whether Eleventh Amendment immunity is properly asserted through a Rule 12(b)(1) or 12(b)(6) motion.

3

construes its motion as one pursuant to Rule 12(b)(1) in addition to Rule 12(b)(6)."); *Cortlandt St. Recovery Corp. v. Deutsche Bank AG*, No. 12 Civ. 9351(JPO), 2013 WL 3762882, at *1 n.1 (S.D.N.Y. July 18, 2013) (adopting the same approach).

## II.     Motion to Dismiss Under Rule 12(b)(1)

A Rule 12(b)(1) motion is the proper channel for dismissal "when the district court lacks the statutory or constitutional power to adjudicate" a matter. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). However, where a defendant brings a fact-based Rule 12(b)(1) motion, "proffering evidence beyond the [complaint]," the plaintiff must respond with evidence to controvert any factual issues raised regarding subject-matter jurisdiction. *See id.* at 57. Necessarily, then, a district court considering a Rule 12(b)(1) motion "may consider evidence outside the pleadings." *See Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). If the evidence proffered "does not contradict plausible allegations that are themselves sufficient to show standing," a plaintiff may simply rely on the allegations in its complaint. *Carter*, 822 F.3d at 57. Issues raised in a Rule 12(b)(1) motion should be resolved first, since a court must confirm that it has subject-matter jurisdiction before proceeding to the merits of a claim. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *SEC v. Rorech*, 673 F. Supp. 2d 217, 220–21 (S.D.N.Y. 2009).

## III.    Motion to Dismiss Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In that vein, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). That measure of plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"—the pleaded facts must permit a "reasonable inference" of liability for the alleged misconduct. *Id.*; *see also Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (instructing that "all reasonable inferences" are to be taken in the plaintiff's favor). Beyond the facts alleged in the complaint, a court may also consider "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## DISCUSSION

Plaintiff brings her first claim under 18 U.S.C. § 925A, which instructs:

> Any person denied a firearm pursuant to subsection (s) or (t) of section 922[] . . . due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act[] . . . may bring an action against the State or political subdivision responsible for providing the erroneous information . . . for an order directing that the erroneous information be corrected . . . .

While subsection (s) is no longer operative, *see id.* § 922(s)(1), subsection (t) dictates that "a licensed importer, licensed manufacturer, or licensed dealer shall not transfer a firearm to any other person who is not licensed under this chapter," subject to certain exceptions, *see id.* § 922(t)(1). Section 925A thus provides a specific, equitable remedy for those denied a firearm transfer by a licensed importer, manufacturer, or dealer due to erroneous reporting by the State or the NICS.

Plaintiff brings her constitutional claims pursuant to 42 U.S.C. § 1983, which provides:

5

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Section 1983 does not create any substantive rights; rather, it serves as a vehicle "for vindicating federal rights elsewhere conferred." *See, e.g.*, *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 133 n.3 (1979)). In that vein, Plaintiff invokes § 1983 to assert claimed violations of the Sixth and Fourteenth Amendments against the State. *See* ECF No. 1.

## I.  Standing and Mootness

Article III of the U.S. Constitution limits the adjudicatory power of federal courts to "[c]ases" and "[c]ontroversies." U.S. Const. Art. III, § 2. Thus, from the outset, federal courts do not have subject-matter jurisdiction over cases in which plaintiffs lack the requisite standing to bring suit. *See, e.g.*, *John*, 858 F.3d at 735. Constitutional standing requires that a plaintiff "have suffered (1) a concrete, particularized and actual or imminent injury-in-fact (2) that is traceable to [the] defendant's conduct and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009); *see also Lujan*, 504 U.S. at 560 (describing an "injury in fact" as the "invasion of a legally protected interest"). A plaintiff invoking federal jurisdiction "must demonstrate standing for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).

The concept of standing is closely related to that of mootness, "which is 'whether the occasion for judicial intervention *persists*.' " *Chevron Corp. v. Donziger*, 833 F.3d 74, 123 (2d Cir. 2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975)). Mootness derives from the same case-or-controversy requirement of Article III. *See id.* When the parties have no "legally

cognizable interest in the outcome"—and, accordingly, the court cannot "grant *any* effectual relief *whatever* to the prevailing party"—the case is rendered moot. *See id.* at 123–24 (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000), and *Chafin v. Chafin*, 568 U.S. 165, 172 (2013), respectively). At that point, the court lacks subject-matter jurisdiction over the matter. *Id.* at 121; *Doyle*, 722 F.3d at 80.

1. **Erroneous Reporting to the NICS**

Plaintiff seeks correction of the erroneous "involuntary" classification reported by the State to the NICS. ECF No. 1, at 31. However, the State explains that the requested correction has already been made: "The hospital has changed their records from involuntary admission to voluntary admission. That information has been transmitted to New York State who has corrected their records and transmitted the change to the Federal government." ECF No. 7-2, at 4–5; *see also* ECF No. 7-1, at 1–2; ECF No. 13-1. As a result, Plaintiff has already received the entirety of her requested relief—the State has corrected her classification and communicated that change to the federal government.[5]

Plaintiff attempts to preemptively fend off the mootness issue, claiming that her "scenario . . . . is capable of repetition while evading review." ECF No. 1, at 25. The Supreme Court has explained that this exception is reserved for " 'exceptional situations,' where (1) 'the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2)

---

[5] Plaintiff also requests attorney's fees under 18 U.S.C. § 925A. ECF No. 1, at 31. An interest in attorney's fees cannot confer jurisdiction where the underlying claim is moot. *See, e.g.*, *N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester Cty. Taxi & Limousine Comm'n*, 272 F.3d 154, 159 (2d Cir. 2001). Accordingly, Plaintiff's request does not save her erroneous-reporting claim. In turn, however, mootness does not preclude the possibility of attorney's fees, *see Dean v. Blumenthal*, 577 F.3d 60, 70 n.9 (2d Cir. 2009)—rather, the statute instructs that fees are limited to "prevailing part[ies]," *see* 18 U.S.C. § 925A. But "a defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur*" to make the plaintiff a "prevailing party." *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001). Thus, even if Plaintiff had a claim under the statute—which the Court has not determined—she would not be a "prevailing party" eligible to receive attorney's fees.

'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.' " *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)) (alterations in original). Plaintiff fails to plead facts supporting either of these prongs—instead, she simply states that "[t]he scenarios described herein continues [sic] against other individuals similarly situated, at this time, reflecting approximately 500,000 persons in New York and more than 4,000,000 persons across the United States." ECF No. 1, at 25–26. The fact that others may face similar situations does not negate the mootness of Plaintiff's individual claim.

On a separate front, however, if the court cannot provide relief because the defendant voluntarily stopped the challenged practice, the case is not rendered moot. *E.g.*, *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) (explaining that the contrary would allow the defendant to simply resume its conduct post-dismissal). But if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," then the case will be found moot, notwithstanding the voluntary cessation. *Id.* (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)) (internal quotation marks omitted). That showing requires the defendant to demonstrate "that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Although the State voluntarily granted Plaintiff's relief, the complained-of circumstances do not represent the sort of ongoing conduct that the voluntary-cessation exception appears to contemplate. *See, e.g.*, *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (noting that the exception "has been interpreted to apply generally in cases in which a type of judgment with

continuing force, such as an injunction, is sought" (internal quotation marks omitted)). Through her erroneous-reporting claim, Plaintiff seeks the one-time fix of having her classification corrected, not to enjoin some continuing practice or policy that the State could potentially resume post-litigation. *See, e.g.*, *Starodubtsev v. Gonzales*, No. CIV 06-6178-TC, 2006 WL 3827458, at *3 (D. Ore. Dec. 20, 2006) (adopting the magistrate judge's Findings and Recommendation, which described the voluntary-cessation analysis as "forced at best" where plaintiffs "requested a discrete, one-time order akin to a mandatory injunction," not "an order for continuing relief" or an order "to protect them against affirmative conduct"); *see also Rohas v. Mukasey*, No. 08-0064-WS-M, 2008 WL 2705358, at *2 (S.D. Ala. July 7, 2008) (contrasting a "practice" with a "one-time decision").

Nevertheless, to the extent the voluntary-cessation exception is relevant, Plaintiff's erroneous-reporting claim remains moot. The State has shown that there is no reasonable expectation that Plaintiff will be erroneously reported to the NICS again. Per the sworn declaration of John B. Allen, Jr., Special Assistant to the Commissioner of the New York State Office of Mental Health, the hospital and the State have both corrected their records to reflect Plaintiff's voluntary admission, and Plaintiff's report has been removed from the NICS. *See* ECF No. 13-1, at 5–6. Moreover, Special Assistant Allen confirmed that, pursuant to an audit by the State, the hospital reported that it "would be conducting additional education of its staff to instruct them on proper procedures," and it also indicated that its "department managers [would be] regularly auditing [hospital] records to ensure compliance in the future." *Id.* at 6. In addition, any residual effects of the erroneous reporting have been eliminated: Plaintiff's record has been corrected at the hospital, State, and federal levels, and Judge Falvey ordered her permit reinstated and firearms returned. Given these showings, Plaintiff's erroneous-reporting claim remains moot.

### 2. Right to Counsel for Indigent Litigants

Plaintiff maintains that, pursuant to the Sixth and Fourteenth Amendments, "[a]n individual should be entitled to assigned and free legal counsel when defending against mental health allegations in a license hearing." ECF No. 1, at 28–29. She therefore seeks "[a] permanent injunction that requires States to provide free and assigned legal counsel to an individual defending against allegations made under 18 U.S.C. § 922(g)(4) and/or any State law like New York Penal Law §400.00(11) and New York Mental Hygiene Law §9.46." *Id.* at 31–32. From the outset, the Court notes that Plaintiff was represented by counsel throughout her proceedings. Moreover, even if Plaintiff articulated an injury-in-fact, it would not be traceable to action by the State. The Complaint does not indicate that Plaintiff sought the appointment of counsel or informed the Yates County Court that she was indigent—instead, Plaintiff simply hired an attorney on her own initiative. Thus, given the lack of standing, the Court does not reach the validity of the asserted right, and this claim must be dismissed.

### 3. Right to Notification of Reporting

Plaintiff also claims that, pursuant to the Fourteenth Amendment, "[a]ll individuals should have a right to notification when the government takes action against them in accordance with 18 U.S.C. §922(g)(4) and/or any state law like New York Penal Law §400.00(11) or New York Mental Hygiene Law §9.46." *Id.* at 31. As a result, she seeks various forms of injunctive relief compelling the federal and state governments to provide concurrent and retroactive notification to individuals reported to a state or the NICS, in addition to auditing requirements. *Id.* at 32.

As the State observes, Plaintiff received notice that she had been reported to the State and the NICS. Indeed, that notice prompted the legal process by which Plaintiff successfully disputed her "involuntary" classification. Plaintiff argues that "[w]hether or not [she] was 'notified' and

had an opportunity to respond to that notification does not divest this Court of review of what happened to her and to issuing an opinion on point." ECF No. 10-3, at 31. Plaintiff is incorrect—that is *precisely* what the absence of an injury-in-fact does. The Court cannot, as Plaintiff suggests, disregard the lack of standing and "address the situation now, with an awareness of the numbers [sic] of individuals involved." *Id.* To do so would run afoul of Article III and the Court's jurisdictional strictures. Instead, Plaintiff's lack of standing means that—like her right-to-counsel claim—her right-to-notice claim must be dismissed.

## II.     Eleventh Amendment Immunity

Beyond the issues of standing and mootness, the State also asserts its sovereign immunity under the Eleventh Amendment. *See* ECF No. 7. The Eleventh Amendment bars federal claims against states, absent their consent to such suits or an express statutory waiver of immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Plaintiff argues that the State cannot assert its Eleventh Amendment immunity—she claims that the State's Eleventh Amendment argument "cannot be made in a motion to dismiss" on Rule 12(b)(6) grounds, and she cites Rule 12(h) to contend that "Defendant waived any defense concerning jurisdiction." ECF No. 10-3, at 31. Plaintiff is incorrect.

Eleventh Amendment immunity is properly understood as either an affirmative defense or a matter of subject-matter jurisdiction. *See Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit."). If understood as an affirmative defense, Eleventh Amendment immunity would be properly asserted in a Rule 12(b)(6) motion. If considered in terms of subject-matter jurisdiction, it would be raised in a Rule 12(b)(1) motion, but it is not

waived if it is joined with "other defenses or objections in a responsive pleading or motion." *See* Fed. R. Civ. P. 12(b). Under either formulation, the State has invoked its Eleventh Amendment immunity. Apart from this clarification, the Court need not address the issue further, since—as a threshold matter—Plaintiff's claims fail to present a live case or controversy for the Court to resolve.

## CONCLUSION

For the reasons stated, the State's Motion to Dismiss (ECF No. 7) is GRANTED, and Plaintiff's Complaint (ECF No. 1) is DISMISSED. Plaintiff's Cross-Motion for Summary Judgment (ECF No. 10) is DENIED AS MOOT. The Clerk of Court is directed to terminate this case.

IT IS SO ORDERED.

Dated: February 26, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court